UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MILLER WEISBROD, LLP, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:13-CV-2695-B |
| | § | |
| KLEIN FRANK PC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Klein Frank P.C.'s Motion for Summary Judgment (doc. 30),

filed November 22, 2013. For the reasons stated below, the Court **DENIES** Defendant's Motion.

I.

BACKGROUND[1]

This case arises out of an attorney's fees dispute in a state personal injury lawsuit. In late

2009, Miller, Curtis, & Weisbrod, LLP ("Miller") was retained to act as local counsel in *Dawson v.*

*Fluor Intercontinental, Inc. et al.*, Case No. 09-cv-15340 ("the Dawson lawsuit"), a suit previously

pending in the 134th District Court of Dallas County, Texas.[2] Doc. 1-3, Orig. Pet. ¶ 9. David and

Stephanie Dawson, the plaintiffs in the state court action, signed a fee agreement with Defendant

Klein Frank P.C. (Klein Frank) and Miller that provided for an overall attorney's fee equal to 33.3%

---

[1]The Court takes its factual account from the uncontested facts contained in the summary judgment record. Any contested fact is identified as the allegation of a particular party.

[2]Miller, Curtis & Weisbrod, LLP, was dissolved prior to the initiation of this case and its interest in litigation was transferred to Miller Weisbrod, LLP. Doc. 1-3, Original Pet. ¶ 13.

of any gross amount collected prior to appeal. *Id.*; doc. 41, Miller Fee Ag. Ex. C. Although the parties

ultimately disagreed as to whether Miller was entitled to its share of the attorney's fees, a letter that

accompanied the fee agreement further provided that Miller would take 30% of any attorney's fees

collected and that Klein Frank would take the remaining 70%. Docs. 1-3, Orig. Pet. ¶ 9; 6, Def.'s

Answer ¶ 9; 41, Letter Ex. C.

In August 2010, Klein Frank terminated Miller and subsequently entered into a fee-sharing

agreement with Plaintiff James E. Girards and James E. Girards P.C. d/b/a The Girards Law firm ("the

Girards"). *See* doc. 41, Letter Ex. A. The parties disagree as to the form and substance of this

agreement, but they do agree that the Girards were retained to act as local counsel in the Dawson

lawsuit. Docs. 6, Def.'s Answer ¶ 15; 41, Pls.' Resp. 3. On October 5, 2010, Klein Frank sent a letter

("the Letter") to the Dawsons in which it notified the Dawsons that the Girards had been retained

as local counsel and indicated that the Girards would receive 15% of any attorney's fees recovered,

with the possibility of receiving up to 30% of any attorney's fees if the case progressed to trial.  Doc.

41, Letter Ex. A. Attached to this letter was a fee agreement (hereinafter "the Written Agreement")

containing terms similar to those appearing in the prior fee agreement that Miller had signed. *Id.* The

Dawsons, Klein Frank, and Jim Girards all signed the Written Agreement, although the heading

above the signature blocks for Girards and the Dawsons indicated that they "approved" the

Agreement. *Id.*

In the fall of 2011, Klein Frank also terminated the Girards. Docs. 1-3, Orig. Pet. ¶ 17; 6,

Def.'s Answer ¶ 17. The Dawson lawsuit was later tried before a jury and judgment was rendered for

David Dawson, awarding $17,328,280.00 in damages. Doc. 1, Notice of Removal 1. The case is

currently on appeal before the Texas Fifth District Court of Appeals. Doc. 3, Notice of Related

Cases.

In late 2011, Klein Frank filed an action in Colorado state court seeking a declaration that the Girards and Miller were not entitled to attorney's fees for their work in the Dawson lawsuit because they were terminated for cause. Doc. 41, Colorado Order Ex. P, at 2; *see also Klein Frank, P.C. v. Girards*, 932 F. Supp. 2d 1203, 1208 (D. Colo. 2013). The case was later removed to the United States District Court for the District of Colorado and the court later granted the Girards' motion to dismiss for lack of personal jurisdiction. *Klein Frank, P.C.*, 932 F. Supp. 2d at 1217.

On June 4, 2013, Plaintiffs filed their Original Petition in state court seeking a declaration that Miller is entitled to a 30% share of attorney's fees from the Dawson lawsuit, or, alternatively, the fair value of services rendered under quantum meruit, and that the Girards are entitled to a 15% share of the attorney's fees, or, alternatively, the fair value of services rendered under quantum meruit. Doc. 1-3, Orig. Pet. at 6. On July 12, 2013, Klein Frank filed its Notice of Removal (doc. 1) based on diversity. On September 24, 2013, Miller voluntarily dismissed its claims against Klein Frank and Klein Frank dismissed its counterclaims against Miller. Doc. 25, Stipulation. Klein Frank now moves for summary judgment on the Girards' claims.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline*

*& French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). But the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

*A. Objections*

As an initial matter, the Court must address the Girards' objections to Klein Frank's summary judgment arguments. The Girards first object to Klein Frank's claims that the alleged fee-sharing agreement between the parties is illegal. The Girards insist that this defense was waived when it was not raised in Klein Frank's Answer. The Girards also object to Klein Frank's suggestion that this Court should consider the Colorado Rules of Professional Conduct in reaching its decision as to the enforceability of the fee-sharing agreement.

As to the Girards' first objection, they fail to establish that Klein Frank has waived its

illegality defense. Under Federal Rule of Civil Procedure 8(c), a part must, when responding to a pleading, "affirmatively state any avoidance or affirmative defense, including . . . estoppel." Failure to plead an affirmative defense may result in waiver. *McDaniel v. IntegraCare Holdings, Inc.*, 901 F. Supp. 2d 863, 868 (N.D. Tex. 2012). Even if a defendant fails to set forth affirmative defenses in its responsive pleadings, however, if an affirmative defense "is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply precisely with Rule 8(c) is not fatal." *Lucas v. U.S.*, 807 F.2d 414, 417 (5th Cir. 1986) (citations omitted). If the defendant raises the defense "at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond," then the affirmative defense is not waived. *Id.* "The prejudice inquiry considers whether the plaintiff had sufficient notice to prepare for and contest the defense, and not simply whether the defense, and evidence in support of it, were detrimental to the plaintiff." *McDaniel*, 901 F. Supp. 2d at 868 (citing *Rogers v. McDorman*, 521 F.3d 381, 387 (5th Cir. 2008)). Here, the Girards do not allege any prejudice that would arise from considering Klein Frank's illegality defense as raised in Klein Frank's Motion for Summary Judgment. Furthermore, the Court notes that Klein Frank filed its Motion on November 22, 2013, nearly four months before the end of the discovery period. The Girards do not explain why they were unable to conduct the necessary discovery to adequately prepare and respond to Klein Frank's motion during this period. *McDaniel*, 901 F. Supp. 2d at 868. Accordingly, the Court determines that the Girards were not prejudiced in their ability to respond when Klein Frank raised its illegality defense in its Motion for Summary Judgment, and the Girards' objection to Klein Frank's illegality defense is therefore **OVERRULED**.

As to the Girards' objection to Klein Frank's reliance on the Colorado Rules of Professional Conduct, the Court does not find it necessary to rule on this objection, for two reasons. First, the

Court does not need to rule on the Girards' objection because Klein Frank does not clearly ask the Court to treat the Colorado Rules as binding when reaching its holding. Rather, Klein Frank merely asks the Court to consider the Colorado Rules as relevant "circumstances." Doc. 31, Def.'s Br. 10. Klein Frank does not otherwise mention the Colorado Rules, and it does not respond to the Girards' objection. Second, even if the Court does take into account the Colorado Rules, they will not affect the Court's decision because the one Colorado Rule that Klein Frank relies upon is substantially similar to the corresponding Texas Rule. Klein Frank only cites to Colorado Rule 1.5(d) regarding divisions of attorney's fees between attorneys of different law firms. This rule provides that a client must confirm in writing her agreement to a division of fees among attorneys. Texas Disciplinary Rule of Professional Conduct 1.04(f) similarly requires a client to consent in writing to an arrangement for a division of fees. Because the Court concludes that the Rules are similar, and because it ultimately holds that the parties' fee-sharing agreement does not violate either Rule, it does not rule on the Girards' second objection.

*B. Parties' Contentions*

Klein Frank moves for summary judgment as to the Girards' declaratory judgment claim. Klein Frank maintains that the only agreement upon which the Girards base their claim for attorney's fees is an alleged verbal contract between the Girards and Klein Frank. Doc. 31, Def.'s Br. 1, 4-5. Klein Frank alleges that such a verbal contract violates both the Texas and Colorado rules governing attorney conduct, both of which require the written consent of the client to a division-of-fees agreement. *Id.* at 6-8. Klein Frank also asserts that the verbal agreement violates Texas disciplinary rules and law because contingency fee agreements must be in writing. *Id.* at 8. Klein Frank further argues that the fee-sharing agreement, as interpreted by the Girards, is unconscionable

because it would award them 15% of the overall attorney's fees from the Dawson lawsuit without requiring them to do any work. *Id.* at 8-9. Finally, Klein Frank maintains that the Girards should be estopped from arguing that they were parties to a written agreement because the Girards have argued in other courts that they were not a party to any written agreement. Doc. 44, Def.'s Reply 5-6.

The Girards respond that there is sufficient evidence to show that there is "an agreement for fees in proportion to the professional services/responsibilities with written consent of the clients." Doc. 41, Pls.' Resp. 5. The Girards rely specifically on the Written Agreement and the Letter, arguing that these written instruments constitute a formal memorialization of Klein Frank and the Girards' fee-sharing agreement and therefore meet the requirements of Texas Rule 1.04(f). *Id.* at 3, 5. The Girards maintain that Klein Frank has taken statements from Jim Girards's deposition testimony out of context and in the process has ignored the written confirmation of the attorneys' agreement. *Id.* at 5. The Girards further argue that Klein Frank should be estopped from arguing that the Written Agreement is illegal because Klein Frank did not raise this defense in its Answer and because it has otherwise sought to enforce the agreement against the Girards in other legal proceedings. *Id.* at 6-8.

To decide this Motion, the Court must brave an unruly thicket of fine distinctions and vague posturing set forth in the parties' briefs. Shearing away the extraneous arguments and confusing assertions as it is able, the Court determines that the parties' disagreement essentially boils down to a single question: was the parties' fee-sharing agreement verbal or written? An answer to this inquiry will dictate the Court's conclusion as to the ultimate enforceability of the agreement under Texas law and the relevant rules of professional conduct.

1.     Estoppel

i. *Judicial estoppel*

Before the Court can consider the parties' respective positions on whether the fee-sharing agreement was written or verbal, however, it must first address the parties' estoppel claims. Both parties argue that the other side should be judicially estopped from assuming a position contrary to the position it assumed in prior litigation over this matter. Specifically, Klein Frank argues that the Girards should not be permitted to argue that they are a party to a written agreement when they have asserted in other courts that they are not parties to a written agreement. Doc. 44, Def.'s Reply 5-6. The Girards, in turn, argue that Klein Frank should not now be able to claim that the Girards are not parties to the Written Agreement, when it has otherwise argued that the Girards are bound by the terms of that agreement. Docs. 41, Pl.'s Resp. 6-8.

"The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Reed v. City of Arlington*, 650 F.3d 571, 573-74 (5th Cir. 2011) (citations omitted); *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003). To show that judicial estoppel applies, a party must show that (1) the party against whom judicial estoppel is sought has asserted a legal position which is clearly inconsistent with a prior position and (2) that the court accepted that previous position. *Hall*, 327 F.3d at 396. The "previous acceptance" consideration does not necessarily require that a party against whom judicial estoppel is invoked must have prevailed on the merits, but will apply when a court has accepted the party's prior argument "either as a preliminary matter or as part of a final disposition." *Id.* at 398-99. The Supreme Court has also noted a third relevant consideration: "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532

U.S. 742, 751 (2001). Finally, the Fifth Circuit has also required a showing in some contexts that the party to be estopped did not act inadvertently. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 267 (5th Cir. 2012).

While both parties argue that the other should be estopped from assuming a position inconsistent with the one it assumed in another court, only Klein Frank is able to make out a proper claim for judicial estoppel. The Girards' claims fail because they do not demonstrate that a court accepted Klein Frank's prior position that the Girards were parties to the Written Agreement.[3] Indeed, the evidence tends to show that prior courts rejected Klein Frank's prior position that the Girards were parties to the Written Agreement. Docs. 41, Dismissal Order Ex. P, at 3; 44, Def.'s Reply 5-6; 44-2, Intervenor Response Ex. B. The Girards therefore fail to establish the acceptance element of their judicial estoppel claim, and therefore Klein Frank should not be estopped from

---

[3]The Girards' briefs do not clarify what theory of estoppel they intend to rely on, but the Court discerns from their brief that they intend to assert a claim based on judicial estoppel. Doc. 41, Pls.' Resp. 6. The Girards' argument confuses a few issues, however. First, to the extent that the Girards argue that Klein Frank cannot raise its illegality defense because it has not raised it previously, this is more akin to a waiver argument and has been rejected above by the Court in response to the Girards' first objection. Second, to the extent that the Girards argue that Klein Frank cannot now claim that the agreement was unenforceable because it previously argued that it was enforceable, the Girards paint with excessively broad strokes. While Klein Frank may have asserted in other courts and in its pleadings that the parties had entered into a fee-sharing agreement, the Girards provide no evidence to show that Klein Frank consistently asserted that the agreement was enforceable. Moreover, the evidence that the Girards do submit indicates that Klein Frank attempted to enforce some of the terms contained in the Written Agreement against the Girards, which suggests that Klein Frank only argued previously that the parties' fee-sharing agreement *as contained in the Written Agreement* was enforceable. Doc. 41, Colo. Order Ex. P, at 3; 41, Pls.' Resp. 6 n.26 ("Klein Frank had sought to force arbitration between it and Girards in the Colorado litigation, but the court there ruled that the arbitration agreement was between Klein Frank and Dawsons and not between Girards and the Dawsons."). Klein Frank's current position would not necessarily be inconsistent with this prior position, therefore, but would instead be more concessionary, as it essentially accepts that the evidence shows that the parties' fee-sharing agreement is in fact verbal and not contained in the Written Agreement, but argues that such an agreement is actually contrary to the law. Regardless of whether Klein Frank's position is actually inconsistent or not, however, the Girards fail to show that a court previously accepted Klein Frank's position that the parties were bound by the Written Agreement's terms, and therefore fail to make out a claim for judicial estoppel.

asserting that the Girards were parties only to a verbal fee-sharing agreement.

In contrast to the Girards, Klein Frank makes a successful showing that the Girards should be estopped from relying on the Written Agreement or the Letter to defeat summary judgment. First, Klein Frank shows that the Girards have assumed a position that is exactly opposite to the legal position that they assumed in other courts. In a response to a Motion to Strike and to Compel Arbitration filed in Texas state court, the Girards asserted that they were not party to the Written Agreement. Doc. 44-2, Girards' Resp. Ex. B., at 2. The Girards further stated that

> In an unsigned letter that Girards never saw, was never informed and did not agree to, the Dawsons were informed that 'the law firms who have signed this agreement specifically agree to the terms of the Fee Agreement attached as Exhibit A and agree to binding arbitration by a single arbitrator as set forth in the fee agreement.' This was false.

*Id.* at 3. The state court apparently relied upon this position to refuse to enforce the arbitration provision contained in the Written Agreement against the Girards. Doc. 44, Def.'s Reply 5. The Girards also made a similar argument in a motion to dismiss for lack of personal jurisdiction filed in the United States District of Colorado, which the court accepted and relied upon in determining that it lacked personal jurisdiction over this dispute. Doc. 41, Colo. Order Ex. P, at 2.

In direct contrast to these arguments, the Girards now rely upon the Letter and Written Agreement and argue that summary judgment should be denied because the parties' fee-sharing agreement was reduced to writing and meets the requirements of Texas law. Doc. 41, Pls.' Resp. 3-5, 7. The Girards' Complaint is unclear with regards to whether the Girards are claiming that they are parties to the Written Agreement, as it alleges at one point that the Dawsons "entered into an agreement with The Girards Law Firm and Klein Frank, P.C. under which the firms would share in the responsibility and risk of the Dawson Lawsuit," and then alleges at another that the Girards are

entitled to "their 15% share of attorney's fees recovered in the Dawson lawsuit *under the agreement with Klein Frank, P.C.*" Doc. 1-3, Orig. Compl. ¶¶ 23, 25 (italics added). Despite this initial inconsistency, however, the Girards' Response to Klein Frank's Motion for Summary Judgment clarifies that the Girards intend to rely on the Written Agreement and the Letter as written agreements between them and Klein Frank. Doc. 41, Pls.' Resp. 3-5, 7. For example, the Girards assert in their brief that while the parties did have a verbal agreement, it was later "reduced to writing" and approved in writing by the Dawsons, Klein Frank, and the Girards. *Id.* at 3. The Girards repeatedly refer to their agreement as a "document," a "memorialization," and as a "written fee agreement." *Id.* at 5, 7. The Girards also refer to the Written Agreement and the Letter collectively as "written confirmation of the arrangement with client consent." *Id.* at 3, 5. These assertions contrast directly with the position that the Girards successfully argued in both Colorado and Texas courts and are sufficiently inconsistent to support a claim for judicial estoppel. *See Hall*, 327 F.3d at 396-97 (holding that inconsistent statements made in prior pleadings, motions, responses, and in pretrial hearings, were sufficient to satisfy the requirements for judicial estoppel).

Klein Frank also successfully demonstrates that other courts accepted the Girards' prior position as to the Written Agreement and the Letter. Again, acceptance, for the purposes of the judicial estoppel analysis, can occur "either as a preliminary matter or as part of a final disposition." *Hall*, 327 F.3d at 398 (citations omitted). The relative breadth of the acceptance requirement allows it to better achieve its intended purpose, which is "to minimize the danger of a party contradicting a court's determination based on the party's prior position and, thus, mitigate the corresponding threat to judicial integrity." *Id.* While the Colorado federal court and Texas state court both rejected Klein Frank's attempts to enforce the arbitration provisions of the Written Agreement against the

Girards, they accepted the Girards' position that they were not parties to the Written Agreement or the Letter, and rendered decisions accordingly. Doc. 41, Colo. Order Ex. P, at 2; 44, Def.'s Reply 5. To allow the Girards to now assume a different position than the one they adopted in other courts would therefore ignore that the Girards successfully relied on that position to avoid jurisdiction in Colorado and to side-step arbitration, thus undermining the integrity of the judicial process.

Finally, if the Girards were not estopped from asserting that they were parties to the Written Agreement or from relying on the Letter as a written agreement, then they would "derive an unfair advantage or impose an unfair detriment on" Klein Frank. *New Hampshire*, 532 U.S. at 751. Specifically, the Girards will gain an unfair advantage in this litigation if not estopped because they have clearly shifted positions on the issue of whether they were parties to a written agreement solely for the purpose of defeating the instant motion for summary judgment. The Girards' gamesmanship is apparent in other motions before this Court in which they revert to their former position and insist that they are not parties to the Written Agreement. *See* docs. 60, Mot. to Quash 2; 66, Pls.' Resp. 2. Accordingly, granting Klein Frank's claim for judicial estoppel will help to prevent the Girards from playing "fast and loose with the court by changing positions based upon the exigencies of the moment." *Hall*, 327 F.3d at 400 (citations omitted).[4]

The Girards may argue that the Court should not consider Klein Frank's judicial estoppel claim because it was raised for the first time in Klein Frank's reply. *Pennsylvania Gen. Ins. Co. v. Story*, No. 3:13-CV-0330-G, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003). This argument is not

---

[4]Similarly, the Girards' shifting position in other documents before this course suggests that their inconsistency on this issue was deliberately calculated to avoid summary judgment and was therefore not inadvertent. *Love*, 677 F.3d at 261.

convincing, however, for a number of reasons. First, given the vague assertions that the Girards make in their Complaint, Klein Frank could not predict what position the Girards might take with regards to the Written Agreement and the Letter later in this litigation. *See* Doc. 1-3, Orig. Compl. ¶¶ 23, 25. Klein Frank therefore reasonably assumed that the Girards would take a position in the current litigation similar to the one it took in other courts, and did not have reason to raise judicial estoppel in its motion for summary judgment. Only after the Girards assumed an inconsistent position with regards to the Written Agreement and the Letter did Klein Frank recognize that it needed to raise judicial estoppel as a defense. For this reason, Klein Frank's estoppel claim, raised in response to the Girards' judicial estoppel argument and new position in their Response, was raised at a pragmatically reasonable time and did not result in unfair surprise such that the Court should not incorporate it into its analysis.

Second, the Girards will experience no palpable injustice if Klein Frank is permitted to make its judicial estoppel argument because the Girards had plenty of time in which they could have filed a surreply to Klein Frank's estoppel claim. *See Pennsylvania Gen. Ins. Co.*, 2003 WL 21435511, at *1 ("no 'palpable injustice' exists where the nonmovants are given a chance to respond"). As noted above, the Girards still had months after Klein Frank's reply was filed in which they could have conducted any necessary discovery or crafted arguments to rebut Klein Frank's estoppel claim. That the Girards elected not to file a surreply in response to Klein Frank's claims was a matter within their sole discretion and will not affect the Court's determination of whether Klein Frank's estoppel claims are properly raised.[5]

---

[5]The Court acknowledges that the Girards did file a surreply in this case that was later stricken by the Court. *See* Doc. 45, Pls.' Surreply. As noted in the Court's previous Order, however, the Court struck the

Finally, and as noted above, the Girards have assumed the position in other briefs before this Court that they are not parties to the Written Agreement. Considering Klein Frank's estoppel argument, will therefore only work to ensure consistency in the Girards' representations. *See* docs. 60, Mot. to Quash 2; 66, Pls.' Resp. 2.

Thus, for the reasons stated above, the Court concludes that the Girards should be estopped from claiming that they were parties to the Written Agreement or from relying on the Letter as some form of a written agreement between the parties.

     *ii.*     *Quasi-estoppel*

The Girards, with little argument or explanation, also insist that the doctrine of quasi-estoppel prevents Klein Frank from claiming that no legally binding contract exists between the parties. "[Q]uasi-estoppel 'precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.'" *Hartford Fire Ins. Co. v. City of Mont Belvieu*, 611 F.3d 289, 298 (5th Cir. 2010) (citations omitted). Quasi-estoppel would not apply under these circumstances, however, because the Girards provide no explanation as to how Klein Frank benefitted from its previous litigation position that the Written Agreement was enforceable against the Girards. *See Long v. Turner*, 134 F.3d 312, 317 (5th Cir. 1998) ("Quasi-estoppel has been held inapplicable where the

---

surreply because the Girards failed to seek leave of court or demonstrate exceptional circumstances prior to filing the surreply. Doc. 45, Order. The Court indicated in that Order that Plaintiffs could file a surreply, but were required to do so in compliance with Court procedure. The Girards never subsequently sought to refile their surreply. Moreover, even if the Court had not stricken the surreply, the Girards did not respond to Klein Frank's judicial estoppel claims in their original surreply. Striking the Girards' surreply did not therefore deprive them of a chance to respond to Klein Frank's estoppel claim.

conduct allegedly giving rise to the estoppel is not shown to have benefited the party sought to be estopped"); *Bott v. J.F. Shea Co., Inc.*, 299 F.3d 508, 512 (5th Cir. 2002) (same). Moreover, arguing an inconsistent litigation position is not the type of conduct that forms the basis for a claim of quasi-estoppel. *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App–Corpus Christ 1994, no writ) (noting that conduct such as "ratification, election, acquiescence, or acceptance of benefits . . . have traditionally been considered the type of conduct which may form the basis of a claim of quasi estoppel"). While the Girards may be able to argue quasi-estoppel in order to prevent Klein Frank from disavowing their agreement after having received the benefits of the Girards' services, *see Enochs v. Brown*, 872 S.W.2d 312, 317 (Tex. App.–Austin 1994, no writ) *disapproved of on other grounds by Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003), they do not make this argument, and the Court hesitates to allow the Girards to use this equitable doctrine to foreclose Klein Frank's assertions that the Written Agreement is not binding on the parties when the Girards themselves advanced the same argument to their own benefit in other courts.

> 2.    The Parties' Fee-Sharing Agreement
>
> > *i.    Written or verbal*

The Court now considers the parties' arguments as to the enforceability of the disputed fee-sharing agreement. Klein Frank asserts that the evidence shows that the only agreement between the parties was a verbal agreement. Doc. 31, Def.'s Resp. 4-5.[6] It points to the deposition of Jim Girards

---

[6]The Court acknowledges that Klein Frank does not expressly adopt this position in its summary judgment briefs. Rather, it has based its arguments on the grounds that *the Girards* assert that the contract is verbal. Doc. 31, Def.'s Br. 4-5. Klein Frank is careful to note that it has never disavowed that a valid written fee-sharing agreement exists between the parties, but it never presents arguments or evidence to show that there is, in fact, a valid written fee-sharing agreement. Doc. 44, Def.'s Reply 2, 4. Instead, Klein Frank repeatedly maintains that no written fee agreement exists "the terms of which allow Girards to do nothing" and argues that the Court should accept the Girards' former position that they were not parties to a written

in which he stated that "first of all, it was a verbal contract which is the way lawyers of honor deal with one another." Doc. 41-1, Girards Dep., at 44. Klein Frank also notes that Girards denied being a party to the Written Agreement, saying "I did not consider myself a party to the contract between Ms. Klein and Mr. Dawson. I considered myself a party to the contract between myself and the Klein Frank firm for local counsel work." *Id.* at 47. Elsewhere in that deposition, Girards states that he did "not sign off on" the Letter and that he saw it "for the first time" after the Dawsons approved the Written Agreement. Docs. 31-1, Girards Dep., at 43; 41, Girards Dep. Ex. N, at 32.  Based on this evidence, Klein Frank insists that it is an undisputed fact in this case that no fee agreement exists between the Girards and the Dawsons and that the parties' fee-sharing agreement was verbal. Doc. 31, Def.'s Br. 4.

As noted, the Girards are judicially estopped from claiming that they are a party to the Written Agreement or from otherwise representing that they accepted the Letter as a formal memorialization of the parties' fee-sharing agreement. Because the Girards argue and submit evidence to show only that the Written Agreement and the Letter constitute a formal written agreement between the parties, therefore, the Girards effectively concede that the fee-sharing

---

fee-sharing agreement as the basis for summary judgment. *Id.* at 4. While the Court ultimately concludes that the Girards should be estopped from adopting an inconsistent position with regards to the Written Agreement and the Letter, the Court also notes Klein Frank's tactics here of putting words into the Girards' mouths is highly unusual. The Court therefore construes Klein Frank's arguments as concessions that the agreement was verbal and will hold Klein Frank to this position later in the case, regardless of Klein Frank's attempts in its briefs to avoid such an outcome by artful pleading. Should the Court do otherwise, it would not be able to rule on the parties' arguments, because it would effectively be rendering an advisory opinion based on facts that would likely otherwise be disputed. *Tsolainos v. Tsolainos*, 59 F. Supp. 2d 592, 597 (E.D. La. 1999) (noting that the court would improperly render an advisory opinion were it to rule on an issue of insurance coverage when "a critical issue of material fact" still existed). Similarly, if the Court did not hold Klein Frank to the position it has adopted for purposes of summary judgment, it would effectively be allowing Klein Frank to engage in the same type of behavior for which the Girards have been estopped.

agreement between Klein Frank and the Girards was verbal. Even if the Girards were not estopped from arguing that the parties had a written agreement, however, the summary judgment evidence submitted by both parties conclusively establishes that the fee-sharing agreement was verbal. For instance, the executed copy of the Written Agreement, signed by the Dawsons, the Girards, and Klein Frank, as well as a copy of the Letter merely confirm that the parties had entered into a fee-sharing agreement. Docs. 41, Written Ag. & Letter Ex. A. Nowhere do the documents purport to confirm the terms of the parties' fee-sharing agreement or to otherwise bind the two firms. In fact, both the Letter and the Written Agreement are directed solely to the Dawsons to inform them of the separate fee-sharing agreement that the firms had reached and to secure the Dawsons' consent to the agreement. *Id.* Moreover, the emails that the parties' exchanged in which they separately cite to the terms of their "fee agreement" generally represent pre-litigation posturing and reveal that the parties believed that the Letter reflected the terms of the agreement that they had separately entered into. Doc. 41, Emails Ex. L, at 20, 24-26, 31. Jim Girards's deposition testimony reaffirms this conclusion, as he insists that he was not aware of the Letter and that he did not consider himself a party to the Written Agreement. Even viewing the evidence in a light most favorable to the Girards, therefore, the Court determines that the summary judgment record conclusively demonstrates that the agreement between the parties was verbal.

ii.     *The enforceability of the fee-sharing agreement*

Having determined that the fee-sharing agreement was verbal, the Court considers the parties' arguments as to the legality of the agreement under Texas law. Klein Frank provides three reasons that the fee-sharing agreement is unenforceable. First, it alleges that the verbal fee-sharing agreement violates Texas and Colorado ethical rules requiring fee-sharing agreements to be in

writing. Second, it argues that the verbal fee-sharing agreement violates Texas law and Texas disciplinary rules that require a contingency fee agreement to be in writing. Finally, Klein Frank maintains that the contract, as interpreted by the Girards, is unconscionable, and therefore unenforceable.

Klein Frank first argues that the fee-sharing agreement is unenforceable because relevant rules of professional conduct in both Texas and Colorado require agreements for divisions of attorney's fees to be in writing. Texas Disciplinary Rule of Professional Conduct 1.04(f) states, in part, that an "arrangement for division of a fee between lawyers who are not in the same firm" may be made only if "the client consents in writing to the terms of the arrangement." Similarly, Colorado Rule of Professional Conduct 1.5(d) only allows a division of fees among lawyers of different firms if the client agrees and "the client's agreement is confirmed in writing." Klein Frank insists that in order to comply with these Rules, the parties would have had to extinguish the alleged verbal contract and replace it with a writing, which the evidence demonstrates they did not do. Doc. 31, Def.'s Br. 7. The Girards do not respond in depth to Klein Frank's argument, but only insist that the Dawsons' signatures on the Written Agreement constitute written consent to the firms' fee-sharing agreement. Doc. 41, Pls.' Resp. 5.

The Court concludes that the clients' signature on the Written Agreement is sufficient consent to satisfy the requirements of Texas Rule 1.04(f) and Colorado Rule 1.5(d). To determine the meaning of the Texas Disciplinary Rules of Professional Conduct, a court must apply general statutory construction rules. *In re Caballero*, 272 S.W.3d 595, 599 (Tex. 2008). The primary objective in construing a statute is to ascertain and give effect to the legislature's intent. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). The court looks first to the

words of the statute, and gives them their ordinary meaning. *Id.* If a statute is unambiguous, then the court must "adopt the interpretation that is supported by its plain language unless such an interpretation would lead to absurd results." *Id.* A court must give effect to all of a statute's words and, to the extent possible, avoid treating any language as mere surplusage. *Caballero*, 272 S.W.3d at 599.

Klein Frank's argument that the cited Rules effectively require all fee-sharing agreements to be reduced to writing misreads both Rules. The Rules each respectively require that the client "consent" or "agree" in writing, but say nothing about whether an agreement between the attorneys splitting a fee must actually be in writing. TEX. DISC. R. PROF'L CONDUCT 1.04(f); COLO. R. PROF'L CONDUCT 1.5(d). The plain language of the Rules therefore unambiguously requires the Dawsons to consent in writing to the fee-sharing agreement, but it does not extend further to require that the agreement be reduced to writing. The parties' verbal fee-sharing agreement therefore comports with the requirements of both Texas Rule 1.04(f) and Colorado Rule 1.5(d).[7]

Determining that the parties' verbal fee-sharing agreement is sufficient under the law does not resolve whether the agreement comports with Texas Rule 1.04(f) and Colorado Rule 1.5(d), however. The Court must also discern whether the Dawsons consented in writing to the parties' fee-

---

[7]Klein Frank also cites to Texas Rule 1.04(g), which provides, in part, that
> Every agreement that allows a lawyer or law firm to associate other counsel in the representation of a person . . . and that results in such an association with . . . a different law firm or a lawyer in such a different firm, shall be confirmed by an arrangement conforming to paragraph (f). Consent by a client or a prospective client without knowledge of the information specified in subparagraph (f)(2) does not constitute a confirmation within the meaning of this rule.

This provision similarly does not mandate that a fee-sharing agreement be in writing, but only states that the "arrangement" for the client's consent must conform to 1.04(f), which, as noted, allows for the actual fee-sharing agreement between attorneys to be verbal. Similarly, the letter that Klein Frank sent to the Dawsons in order to obtain consent contains the essential terms required by Rule 1.04(f)(2).

sharing agreement. A review of the parties' briefing and the summary judgment evidence reveals that the parties do not dispute that the Dawsons properly consented to their fee-sharing agreement. Klein Frank only maintains that the Dawsons did not approve any written agreement that contained the unconscionable terms that the Girards have advocated for. Doc. 31, Def.'s Br. 5. Although Klein Frank crafts its language to avoid making any affirmative representations on the issue, the implication of these assertions is that the Dawsons did consent to the fee-sharing agreement without any unconscionable terms. *Id.* The Girards likewise maintain that the Dawsons consented to the fee-sharing agreement in writing. Doc. 41, Pls.' Resp. 3, 5. The parties therefore agree that the Dawsons consented to the agreement, but merely part ways on how the agreement to which the Dawsons consented should be interpreted, a separate issue which the Court addresses below.

It also bears noting that while Klein Frank argues that in complying with the Rules' writing requirement the parties would necessarily have to reduce their agreement to writing, doc. 31, Def.'s Br. 7, the Court has already concluded that the Rules only require that the Dawsons' consent be in writing and say nothing about the fee-sharing agreement itself. Klein Frank does not point to any case law, nor can the Court locate any relevant cases upon its own review, indicating what form a client's consent must take as a matter of law in order to comply with the Rules. Moreover, Klein Frank does not dispute the Girards' assertions that the Dawsons' signatures on the Written Agreement constitute written consent to the parties' fee-sharing agreement. Doc. 41, Pls.' Resp. 3, 5. Having reviewed the language of the Rules and relevant case law on the matter, the Court agrees that the Dawsons' signatures approving the terms of the Written Agreement, as attached to the Letter, are sufficient to meet the Rules' consent requirements.

The evidence in the record confirms the Court's conclusion that the Dawsons consented to

the firms' fee-sharing agreement. The record shows that the Letter and Written Agreement were attached and sent to the Dawsons together. Doc. 41, Written Agreement & Letter Ex. A. According to Jim Girards's testimony, the Letter was included on top of the Written Agreement, meaning that the Dawsons would have had to read the Letter before reading and approving the terms of the Written Agreement. Doc. 41, Girards Dep. Ex. N, at 38-39. When the Dawsons signed their names below Jim Girards's signature on the Written Agreement, certifying that they "fully understand and agree with the provisions of this agreement," they were therefore also likely consenting to the parties' fee-sharing agreement. Doc. 41, Written Agreement Ex. A, at 4. Accordingly, the Court determines that the summary judgment evidence conclusively establishes that the Dawsons consented to the parties' fee-sharing agreement in writing and that this consent was sufficient under the law to satisfy the requirements of Texas Rule 1.04(f) and Colorado Rule 1.5(d).

Klein Frank also insists that, because it is a contingency fee arrangement, the verbal fee-sharing agreement violates Texas law as well as public policy as contained in the Texas Disciplinary Rules of Professional Conduct. Although Klein Frank's arguments on this point are less than clear, it maintains that the verbal agreement violates Texas Government Code § 82.065, which provides that "[a] contingent fee contract for legal services must be in writing and signed by the attorney and client." Doc. 31, Def.'s Br. 8.  From the context of its arguments, the Court can also infer that Klein Frank intends to argue that the verbal agreement also violates Texas Rule 1.04(d), which similarly requires a contingent fee to be in writing and to state the method by which the fee is to be determined. *Id.* The Girards do not respond to this argument other than to insist that the agreement was enforceable. Doc. 41, Pls.' Br. 5.

The Court determines that Texas Government Code § 82.065 and Texas Rule 1.04(d) do

not act to invalidate or render voidable the parties' fee-sharing agreement under the circumstances presented here. Specifically, the Court concludes that when, as here, two law firms enter into a separate fee-sharing agreement that entitles each firm to a portion of the overall contingency fees in a case, the writing requirements contained in § 82.065 and Rule 1.04(f) do not apply with the same force.

As an initial matter, the Court notes that the parties' fee-sharing agreement is a separate agreement solely between the two firms. While the Girards' Complaint may not clearly allege whether the agreement was between the two firms separately or whether the agreement included the Dawsons, *see* doc. 1-3, Orig. Compl. ¶¶ 23, 25, the parties' briefs and the record evidence clarify that the disputed fee-sharing agreement was solely between Klein Frank and the Girards. For instance, in their Response, the Girards are careful to note that they reached an agreement with Beth Klein, and that the Dawsons later only approved that agreement. Doc. 41, Pls.' Resp. 3. The Girards cite to Jim Girards's testimony to support these assertions, and elsewhere in that same deposition, Jim Girards stresses that he did not consider himself a party to a contract with Klein Frank and the Dawsons, but instead only considered himself a party to the contract between himself and Klein Frank. Docs. 31-1, Girards Dep., at 47; 41, Girards Dep. Ex. N, at 32. Similarly, Klein Frank states unequivocally in its summary judgment brief that "it is undisputed that no fee agreement exists between the Dawsons and Girards." Doc. 31, Def.'s Br. 4. Finally, the fact that the Girards have not attempted to enforce the fee-sharing agreement against the Dawsons indicates that the parties understood that the fee-sharing agreement was solely between the Girards and Klein Frank.

The fact that the fee-sharing agreement is solely an agreement between two law firms affects the application of § 82.065 or Rule 1.04(d) to the facts here. Specifically, while the writing

requirements in those provisions do clearly apply to contingent fee arrangements between attorneys and clients, it is not clear exactly how they should apply to agreements solely between two law firms. Again, the Court will apply general statutory construction rules to interpret these two provisions. *Caballero*, 272 S.W.3d at 599. The Court adopts the interpretation supported by the plain language of the statute. *TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439. When the plain language of a statute does not convey the Legislature's apparent intent," however, a court may look to other construction aids, "such as the objective of the law, the legislative history, the common law or former statutory provisions, including laws on the same or similar subject, and the consequences of a particular construction." *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867-68 (Tex. 2009).

The Court notes, first, that there is little authority to guide it in its interpretation of § 82.065 and Rule 1.04(d). Nowhere in the statute or in the Disciplinary Rules is the term "client" defined. Klein Frank similarly does not point the Court to any case law that defines "client" or that indicates whether a fee-sharing agreement between two independent attorneys must comply with § 82.065 or Rule 1.04(d). The Court can only locate cases in which the courts have held that fee-sharing agreements, similar to the one presented here, do not constitute a contingent fee agreement between the associated counsel and clients, but instead are only contracts between the two associating law firms. *Bailey v. Gallagher*, 348 S.W.3d 322, 325-26 (Tex. App.–Dallas 2011, pet. denied); *Wilson v. Dovalina*, No. 04-07-0610-CV, 2008 WL 2744204, at *3 (Tex. App.–San Antonio 2008, no pet.) ("The agreement that Wilson would share a percentage of his fee with Dovalina was between Wilson and Dovalina only, and, therefore, only Wilson or Dovalina could terminate the fee agreement."). These cases do not directly consider whether such agreements must comply with the writing

requirements of § 82.065 and Rule 1.04(d), however, and therefore do not govern the outcome here.

Reviewing the statute as a whole and the objectives behind it, the Court concludes that § 82.065 and Rule 1.04(d) do not apply under the circumstances here to render the fee-sharing agreement unenforceable. While one could argue that lead counsel is technically a client because it retains local counsel to assist in legal matters, such a strained reading of the term overlooks that both the statute and Rule 1.04(d) both explicitly distinguish between attorneys and clients. TEX. DISC. R. PROF. C. 1.04 cmt. 11 ( "contingency fee agreements must be in a writing signed by the client."). Moreover, requiring a writing would make little sense in light of the fact that 1.04(f) does not otherwise require a division of fees to be in writing, even though the comments to Rule 1.04 recognize that divisions of fees most often occur in contingency fee arrangements, as was the situation here. TEX. DISC. R. PROF. CONDUCT 1.04 cmt. 10. Finally, applying the requirements of 1.04(d) and § 82.065 to fee-sharing agreements between two firms does not comport with the underlying purposes of the provisions. As one court has noted, the writing requirement of § 82.065 (and, by extension, 1.04(d)) is part of an effort to "protect vulnerable and unknowing individuals from overreaching or improper behavior on the part of lawyers." *Enochs*, 872 S.W.2d at 318. Such concerns do not arise under the circumstances here, as both law firms who are parties to the fee-sharing agreement are informed providers of legal services. Accordingly, the Court determines that § 82.065 and Rule 1.04(d) do not render the parties' verbal fee-sharing agreement unenforceable.

Finally, Klein Frank argues that the agreement that the Girards insist the parties entered into is unenforceable because the terms are unconscionable. Specifically, Klein Frank points to the deposition testimony of Jim Girards, in which he states that "[m]y agreement with Ms. Klein had nothing to do with benefit or no benefit. . . . And it didn't matter–there was no provision for, well,

if you did good enough work or not good enough work or sufficient volume of work; it was a straight contingent fee arrangement." Doc. 31-1, Girards Dep., at 184-85. Klein Frank relies on this statement as evidence that the Girards have essentially advocated for a verbal contract that allows them to do nothing. Doc. 31, Def.'s Br. 9. It maintains that such an agreement would be unconscionable and would violate Texas Rule 1.04(a). *Id.* The Girards do not respond to these allegations of unenforceability other than to insist that the agreement between the parties was legally binding. Doc. 41, Pls.' Resp. 5-6.

Texas Disciplinary Rule of Professional Conduct 1.04(a) provides that "[a] lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee." TEX. DISC. R. PROF'L CONDUCT 1.04(a). A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable. *Id.* "Whether a particular fee amount or contingency percentage charged by the attorney is unconscionable under all relevant circumstances of the representation is an issue for the factfinder . . . On the other hand, whether a contract, including a fee agreement between attorney and client, is contrary to public policy and unconscionable at the time it is formed is a question of law." *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561-62 (Tex. 2006).

The Court notes, first, that it is not clear whether the evidence truly supports Klein Frank's assertion that the Girards are advocating for a verbal contract that awards them something for nothing. The Girards make no such claim in their briefs, and the evidence that they present indicates that the Girards undertook to perform various acts as local counsel in return for a portion of the attorney's fee. For instance, the Letter states that the Girards "will primarily work on local counsel matters in Texas and will handle most basic hearings, settings and prepare jurisdiction appropriate pleadings. . . . We anticipate that the fee shall be shared based upon the risk and work as the case

progresses." Doc. 41, Letter Ex. A. Furthermore, in the same deposition testimony that Klein Frank cites to, Girards also stated, "I agreed, in return for 15 percent of the gross fee, to work on local counsel matters in Texas only, to handle most basic hearings, settings, and prepare jurisdiction-appropriate pleadings. That's what I agreed to." Doc. 31-1, Girards Dep., at 44. Accordingly, it appears that the Girards agreed to undertake certain responsibilities in return for a portion of the fee and did not anticipate receiving something for nothing.

To the extent that the Girards do interpret the contract to award them 15% of the fee regardless of whether they performed any work, however, such an interpretation would be unconscionable under Texas Rule 1.04(a) and contrary to public policy. *See* TEX. DISC. R. PROF. CONDUCT 1.04(a) ("A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable."); *Campbell Harrison & Dagley, LLP v. Hill*, No. 3:12-CV-4599-L, 2014 WL 2207211, at *12 (N.D. Tex. May 28, 2014) (citing *Davis Law Firm v. Bates*, No. 13-13-00209-CV, 2014 WL 585855, at *4 (Tex. App.–Corpus Christ-Edinburgh Feb. 13, 2014, no pet.) ("[W]e nonetheless conclude that Davis is not entitled to enforcement of the agreement because charging a $70,000 fee for no legal services performed is an unconscionable fee.")). Keeping in mind that a court "must avoid when possible and proper, a construction which is unreasonable, inequitable and oppressive," the Court rejects the Girards' unreasonable interpretation of the contract. *Hycarbex, Inc. v. Anglo-Suisse, Inc.*, 927 S.W.2d 103, 109 (Tex. App.–Houston [14th Dist.] 1996, no pet.).[8]

---

[8]Klein Frank also relies on Jim Girards's testimony to show that the Girards are actually asserting that the fee-sharing agreement contained unconscionable terms permitting the Girards to receive something for nothing. Doc. 31, Def.'s Br. 5. The Court questions whether Girards's testimony can be subjected to such a strained reading, as he generally only testifies to what terms the fee-sharing agreement did not contain rather than the terms it did contain. Doc. 31-1, Girards Dep., at 184-85. Regardless, to the extent the Girards do argue that the fee-sharing agreement contained terms that awarded them a fee regardless of whether they did any work, such a terms would be unconscionable as a matter of law. *Campbell Harrison & Dagley, LLP*, 2014

In rejecting the Girards' interpretation of the agreement as unconscionable, however, the Court does not reject the contract as unenforceable. Indeed, Klein Frank does not contend that the fee-sharing agreement is otherwise unenforceable outside of the Girards' interpretation, and the terms of the fee-sharing agreement laid out in the letter, which the parties' seemingly agree reflected the terms of their verbal agreement, appear to contain the essential terms of their fee-sharing arrangement. Accordingly, while the Court does conclude that the purported interpretation awarding the Girards a portion of the fees for performing no work is unconscionable, it does not conclude, nor do the parties contend, that the fee-sharing agreement is otherwise unenforceable.

In summary, the Court holds that the Girards are estopped from relying on the Written Agreement or the Letter as a formal writing of their fee-sharing agreement. The Court also finds that the Girards have failed to adduce any evidence that creates a genuine issue of material fact as to whether the parties' fee-sharing agreement was written. Rather, the evidence contained in the summary judgment record conclusively establishes that the fee-sharing agreement was verbal. The parties similarly do not dispute that there is no fact issue as to whether the Dawsons consented to the parties' fee-sharing agreement. Contrary to what Klein Frank alleges, the fact that the fee-sharing arrangement was verbal did not, as a matter of law, render it unenforceable under Texas law or the Texas and Colorado rules of professional conduct. Finally, the Court determines that the Girards' interpretation of the fee-sharing agreement allowing them to recover a portion of the attorney's fees

WL 2207211, *12. Contrary to what Klein Frank contends, however, the agreement is not rendered unenforceable simply by the inclusion of an unconscionable term. *Hoover Slovacek LLP v. Walton*, 206 S.W.3d at 565. The Court may sever the unconscionable term and otherwise enforce the agreement. *Id.* Thus, whether the Girards are contending for an unconscionable term or an unconscionable interpretation of the fee-sharing agreement, the Court will enforce the agreement without any unconscionable term and according to a reasonable interpretation of its otherwise enforceable terms.

regardless of whether they performed any work is unconscionable as a matter of law. The fee-sharing agreement may otherwise be enforced to the extent that it contains all essential terms. For these reasons, the Court **DENIES** Klein Frank's Motion for Summary Judgment.[9]

IV.

CONCLUSION

For the reasons stated above, the Court **DENIES** Klein Frank's Motion for Summary Judgment.

SO ORDERED.

Dated: July 16, 2014.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[9]Because it was presented with no evidence or argument on the issue, the Court does not rule on the question of whether the Girards were terminated for cause. This decision therefore does not dispose of this case and a live controversy still exists between the parties.