IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES E. GIRARDS, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:13-cv-2695-BN |
| | § | |
| KLEIN FRANK, P.C., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is an attorneys' fees dispute arising out of a personal injury lawsuit. Local counsel for the plaintiff in that lawsuit was terminated by the plaintiff's lead counsel and now sues the lead counsel, seeking to recover part of the attorneys' fees to be recovered by the plaintiff's attorneys following a settlement.

Following a bench trial, and for the reasons that follow,[1] the Court finds for Defendant Klein Frank, P.C. on the claims of Plaintiffs James E. Girards and James

---

[1] The Court sets out in this memorandum opinion its findings of fact and conclusions of law. *See* FED. R. CIV. P. 52(a)(1). All findings of fact are based on a preponderance of the evidence standard. Although the Court has carefully considered the trial testimony and exhibits, the Court has written this memorandum opinion to comply with the level of detail required in this circuit for findings of fact and conclusions of law. *See, e.g., Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (discussing standards). The Court has not set out its findings and conclusions in punctilious detail, slavishly traced the claims issue-by-issue and witness-by-witness, or indulged in exegetics, parsing or declaiming every fact and each nuance and hypothesis. It has instead written a memorandum opinion that contains findings and conclusions that provide a clear understanding of the basis for the court's decision. *See id.*

E. Girards, P.C. d/b/a The Girards Law Firm for declaratory judgment and breach of contract and finds for Defendant Klein Frank, P.C., in part, on its counterclaim against James E. Girards and James E. Girards, P.C. d/b/a The Girards Law Firm, and the Court finds in favor of Plaintiffs James E. Girards and James E. Girards, P.C. d/b/a The Girards Law Firm on their alternative request for a recovery under quantum meruit.

**Background**

I.   <u>The Underlying Litigation</u>

David Dawson filed suit in Texas state court in Dallas County in a matter styled *Dawson v. Fluor, et al.* Beth Klein, a shareholder in Klein Frank, P.C., was Dawson's lead counsel in that lawsuit.

In early October 2010, after terminating Miller, Curtis, & Weisbrod, LLP as local counsel for Dawson, Klein Frank, P.C. ("Defendant" or "Klein Frank"), through Beth Klein ("Klein"), contacted Plaintiffs James E. Girards ("Girards") and James E. Girards P.C. d/b/a The Girards Law Firm (the "Girards Firm"; collectively with Girards, "Plaintiffs") for the purpose of hiring them to act as local counsel for Dawson in the *Dawson* lawsuit. Girards and Klein spoke over the phone, after which, on or about October 5, 2010, Klein sent a letter to Dawson notifying him that the Girards Firm would be working with Klein Frank on his case and serving primarily as local counsel. *See* Plaintiffs' Exhibit ("PX") 1.

At the end of September 30, 2011, Klein Frank terminated Plaintiffs as counsel for Dawson in the *Dawson* lawsuit. *See* Defendant's Exhibit ("DX") 580.

Thereafter, Klein Frank retained attorney Marquette Wolf with Ted Lyon & Associates in late 2011 to serve as additional counsel in the *Dawson* lawsuit. The lawsuit was eventually tried before a jury, and the trial resulted in a significant verdict for Dawson.

In November 2014, while the judgment was on appeal, Dawson settled his claims against Fluor for a confidential amount.

## II.   The Instant Action

Plaintiffs filed this action seeking a declaration that they are entitled to 15 percent of the attorneys' fees recovered in the *Dawson* lawsuit under their fee-sharing agreement with Klein Frank or, in the alternative, to the fair value of services rendered under quantum meruit. *See* Dkt. No. 1-3 at ¶ 15.

On July 16, 2014, the Court entered a Memorandum Opinion and Order denying Defendant's Motion for Summary Judgment. *See* Dkt. No. 76; *Miller Weisbrod, LLP v. Klein Frank PC*, No. 3:13-cv-2695-B, 2014 WL 3512994 (N.D. Tex. July 16, 2014). The Court held that the fee-sharing agreement between Klein Frank and the Girards Firm was verbal; that "the fact that the fee-sharing arrangement was verbal did not, as a matter of law, render it unenforceable under Texas law or the Texas and Colorado rules of professional conduct"; and that the verbal "fee-sharing agreement may otherwise be enforced to the extent that it contains all essential terms." Dkt. No. 76 at 27, 28; *Klein Frank*, 2014 WL 3512994, at *14. The Court also "determine[d] that [Plaintiffs'] interpretation of the fee-sharing agreement allowing them to recover a portion of the attorney's fees regardless of whether they performed any work is

unconscionable as a matter of law," but the Court "question[ed] whether Girards's testimony can be subjected to such a strained reading, as he generally only testifies to what terms the fee-sharing agreement did not contain rather than the terms it did contain." *Id.* at 26 n.8, 27-28; *Klein Frank*, 2014 WL 3512994, at *13 n.8, *14. The Court also concluded that the letter that Klein sent to Dawson "in order to obtain consent contains the essential terms required by [Texas Disciplinary Rule of Professional Conduct]1.04(f)(2)" and that Dawson consented to the fee-sharing agreement. *Id.* at 19 n.7, 21, 27; *Klein Frank*, 2014 WL 3512994, at *9 n.7, *10, *14.

III.   The Bench Trial

On June 15-16, 2015, the parties presented testimony for the Court's consideration during a bench trial. Girards, Klein, Deb Junek, Marquette Wolf, and Jim Flegle testified live at trial, and the Court observed their demeanor. Clay Miller's testimony was received by deposition.

The Court's Final Pretrial Order sets out the parties' claims and defenses and, under Federal Rule of Civil Procedure 16(d), "controls the course of the action unless the court modifies it." *See* Dkt. No. 153.

Plaintiffs assert three causes of action against Defendant: (1) a request for declaratory judgment that Plaintiffs are entitled to 15 percent of the attorneys' fees recovered in the *Dawson* case; (2) a claim for breach of contract based on Klein Frank's failure to pay the agreed-upon fee to Girards under the verbal fee-sharing agreement; and (3) a request, in the alternative, for recovery of the fair and reasonable value of the services provided in the *Dawson* case under quantum meruit.

-4-

Defendant, in turn, asserts a counterclaim against Plaintiffs and seeks a declaratory judgment that: (a) Plaintiffs failed to perform their contractual duties in their representation of David Dawson; (b) Klein Frank had a duty to terminate Plaintiffs under the circumstances; (c) Klein Frank had the right to terminate Plaintiffs under the circumstances; (d) Klein Frank was justified in terminating Plaintiffs; (e) Klein Frank terminated Plaintiffs for cause for the reasons specified by Defendant; (f) Because Plaintiffs failed to perform under the agreement, or alternatively, were terminated for cause, they are entitled to no fee in the *Dawson* case; and (g) Defendant is entitled to reasonable attorneys' fees and expenses to the extent allowed as further relief under 28 U.S.C. §§ 2201 and 2202.

## Legal Standards and Analysis

Plaintiffs bear the burden of proof and persuasion on the issues of contract formation, meeting of the minds on contract terms, and performance by Plaintiffs, on their claim of breach of contract by Defendant, and on quantum meruit. *See Jourdan v. Schenker Int'l, Inc.*, 275 F. App'x 371, 374-75 (5th Cir. 2008); *Celmer v. McGarry*, 412 S.W.3d 691, 700 (Tex. App. – Dallas 2013, pet. denied); *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). If Plaintiff proves a meeting of the minds as required for an enforceable contract, Defendant then bears the burden of proof and persuasion to show the agreement was justifiably terminated or that the 15 percent fee sought by Plaintiffs is unconscionable under the circumstances. *See generally Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561-62 (Tex. 2006); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195 (Tex. 2004) (per curiam). To the

extent that Defendant seeks affirmative declarations, it bears the same burdens. *See In re Rollings*, 451 F. App'x 340, 345-46 & n.4 (5th Cir. 2011).

As a preliminary matter, the Court's findings and conclusions do not rely on – and, based on the Court's analysis, it was not necessary for the Court to consider – the specific testimony of Clay Miller and Girards to which Defendant has objected, *see* Dkt. No. 157; Dkt. No. 159 at 36-37, and accordingly the Court need not rule on those objections. Put another way, while the Court does not sustain the objections to this testimony, including on relevance grounds in the context of this bench trial, the Court did not find the testimony to be germane to deciding the issues resolved below, including whether there as a meeting of the minds between Klein Frank and Plaintiffs as to the scope of work to be done and compensation to be paid under the verbal fee-sharing agreement.

Further, the amount of the settlement of the *Dawson* lawsuit is confidential, but the Court's findings and conclusions obviate the need to discuss the amount of the settlement, the total amount of attorneys' fees, or the amount of the portion of the fees that Plaintiffs seek.

I.     The Verbal Fee-Sharing Agreement Is Not Enforceable.

In its Memorandum Opinion and Order denying Defendant's Motion for Summary Judgment, the Court did not consider or determine whether the parties had reached a meeting of the minds on every essential element of the fee-sharing agreement and left open for trial a determination whether the verbal fee-sharing

agreement in fact "contains all essential terms" and is therefore enforceable. Dkt. No. 76 at 28; *Klein Frank*, 2014 WL 3512994, at *14.

Under Texas law – which both parties agree should be applied to the verbal fee-sharing agreement here – "a binding contract requires (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 n.17 (5th Cir. 2002) (internal quotation marks omitted). "[T]he requisite elements of both written and oral contracts are the same and must be present for a contract to be binding." *Taj Al Khairat Ltd. v. Swiftships Shipbuilders, L.L.C.*, ___ F. App'x ___, No. 15-30195, 2015 WL 8018547, at *3 (5th Cir. Dec. 4, 2015) (internal quotation marks omitted).

The existence of a valid, enforceable contract is an essential element of a breach of contract claim. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009). To be enforceable, a contract must address all of its essential and material terms with "a reasonable degree of certainty and definiteness." *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955); *accord Coe v. Chesapeake Exploration, L.L.C.*, 695 F.3d 311, 320 (5th Cir. 2012) ("To be enforceable, the terms of an agreement must be sufficiently definite to enable the court to understand each party's obligations."). And "[t]he terms of an oral contract must be definite, certain, and clear as to all essential terms." *In re Jay*, 432 F.3d 323, 327 n.3 (5th Cir. 2005) (internal quotation marks omitted); *accord Southern v. Goetting*, 353 S.W.3d 295, 299-300 (Tex. App. – El Paso 2011, pet. denied)

("The terms of an oral contract must be definite, certain, and clear as to all essential terms and, if they are not, the oral contract fails for indefiniteness.").

A "meeting of the minds," or the parties' mutual understanding and assent to the subject matter and essential terms of the contract, is necessary to form a binding contract. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008); *Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 529–30 (Tex. App. – Houston [1st Dist.] 2007, no pet.); *accord Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 362 (5th Cir. 2013) (per curiam). "All of the parties must assent to the same thing in the same sense at the same time, and their assent must comprehend the proposition as a whole." *Crowell v. CIGNA Group Ins.*, 410 F. App'x 788, 792 (5th Cir. 2011) (internal quotation marks omitted). The requisite meeting of the minds is evaluated "on the objective standard of what the parties said and did – and not on their subjective state of mind." *Wal-Mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 556 (Tex. App. – Houston [14th Dist.] 2002, no pet.); *accord In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012); *Gray Law LLP v. Transcon. Ins. Co.*, 560 F.3d 361, 366 (5th Cir. 2009).

A contract must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). And, "even when that intent is clear, the agreement's terms must also be sufficiently definite to enable a court to understand the parties' obligations, and to give an appropriate remedy if they are breached." *Fischer v. CTMI, L.L.C.*, ___ S.W.3d ___, No. 13-0977, 2016 WL 83477, at *4 (Tex. Jan. 8, 2016) (footnotes and internal quotation marks and citations omitted). But a contract need

only be definite and certain as to those terms that are "material and essential" to the parties' agreement. *See Radford v. McNeny*, 104 S.W.2d 472, 475 (Tex. 1937); *see also T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("The material terms of the contract must be agreed upon before a court can enforce the contract."). Material and essential terms are those that parties would reasonably regard as "vitally important ingredient[s]" of their bargain. *Neeley v. Bankers Tr. Co.*, 757 F.2d 621, 628 (5th Cir. 1985).

"It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846. If an agreement to make a future agreement is not sufficiently definite as to all of the future agreement's essential and material terms, the agreement to agree "is nugatory." *Radford*, 104 S.W.2d at 474-75. Thus, to be enforceable, an agreement to agree, like any other contract, "must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations." *Id.* at 475.

At trial, Girards testified that the verbal fee-sharing agreement that he reached with Klein Frank was for him to receive 15 percent of the attorneys' fees in exchange for performing certain activities as local counsel. Girards testified that his limited engagement did not include working up or funding the case or a requirement that he take depositions or conduct any discovery. According to Girards, the verbal fee-sharing agreement called for him to serve as "local counsel, nothing more, period." Dkt. No. 159 at 112. Girards testified that 15 percent of the fee "was the value attached to that

work"; that Beth "Klein agreed that that was the value, as well, because that's what we agreed to and that's what she memorialized in the letter" sent to Dawson; and that the 15 percent of the fee to be paid to Girards "was the assessment of the risk and work" and "wasn't going to change." *Id.* at 116, 118.

Klein's letter to her client David Dawson [PX 1] stated:

> The law firm of Klein | Frank, P.C. will be working with The Girards Law Firm on your case against FluorAMEC, LLC and Fluor. The Girards Law Firm will primarily work on local counsel matters in Texas and will handle most basic hearings, settings and prepare jurisdiction appropriate pleadings. Klein Frank, P.C. will continue working on all discovery and preparation of the case, will work directly with you on matters that need to be handled in Colorado including depositions of your physicians in Colorado, and we will make appearances in Texas where I am licensed. Both firms will represent you at trial, if this matter proceeds to that point. The Girards Law Firm is not expected to advance costs.
>   We anticipate that the fee shall be shared based upon the risk and work as the case progresses. It is anticipated that the Girards Law Firm will be compensated at 15% of the fee for local counsel representation. If the case[] proceeds to trial, that figure will be adjusted upward to not more than 30% of the fee so that each firm is fairly compensated.

*See also* Defendant's Exhibit ("DX") 502.

Klein testified that she did anticipate that Klein Frank would pay 15 percent of the fee to Girards firm for local counsel work but that, "in [her] world, local counsel work is exactly what I am talking about, preparing pleadings and advising me and doing the work" and that, "in anticipating a 15 percent fee payable to the Girards firm, [she anticipated] that the Girards firm would do 15 percent of the work." Dkt. No. 159 at 371. She also testified that she never had "a meeting of the minds with Jim Girards that suggested that you would pay him 15 percent of the gross fee regardless of the amount of work he did in the case." *Id.* at 376.

Plaintiffs assert that the parties had a meeting of the minds on the verbal fee-sharing agreement's essential terms where the parties agree that the agreement required Klein to pay Girards 15 percent of the attorneys' fees recovered in exchange for Girards's performance as local counsel.

Based on all the evidence in the record, the Court finds that there was no meeting of the minds between Klein Frank and Plaintiffs as to the scope of work to be done and compensation to be paid under the verbal fee-sharing agreement.

The Court finds, looking objectively at what the parties said and did and not to their subjective states of mind, that Klein Frank understood the agreement with the Girards Firm to call for a sharing of fees in proportion to, and based on, the work actually performed and the financial risk assumed by each firm as the case progressed. Indeed, that is what the letter to the client, seeking his consent to the verbal fee-sharing agreement, described. And it is consistent with Texas Disciplinary Rule of Professional Conduct 1.04(f)(1)'s requirement that, where attorneys are not assuming joint responsibility for the representation (where, as here, a local counsel insists that he has undertaken only a "limited engagement"), a division or arrangement for division of a fee between lawyers who are not in the same firm may be made only if the division is in proportion to the professional services performed by each lawyer.

As described in that letter, Klein Frank understood that, if the case work progressed as anticipated, it was likewise anticipated that the Girards Firm would earn and be paid 15 percent of the fee but that the Girards Firm was not entitled to receive no less than 15 percent without regard to how the circumstances of the shared

representation played out over the ensuing years. Girards, on the other hand, understood the agreement to require that he would receive no less than 15 percent of the attorneys' fees in exchange for performing certain activities as local counsel.

But this is not a case where the parties simply left open or failed to fix or specify in advance the total price for services. *See Haden*, 266 S.W.3d at 450. The evidence shows that Plaintiffs and Klein Frank critically did not reach a meeting of the minds as to the scope of work to be done in exchange for the sharing of fees.

The Court does not find that Plaintiffs understood the fee-sharing agreement to allow them to recover a portion of the attorneys' fees regardless of whether they performed any work – and, indeed, there is no dispute that Plaintiffs performed some work as Dawson's counsel.

But the evidence of what Girards said and did shows that his view of the agreement was and still is that Plaintiffs would be paid 15 percent of the fee – regardless of the relative amounts of work performed by the two firms – in exchange for serving as local counsel. And Girards understood that role to require him to assist with Klein Frank's relationship with the court and be available as a resource for the judge, if needed, and serve as a local presence as someone in Dallas who had a relationship with the court, including advising on pertinent issues of local concern, advising about opposing counsel, assisting with minor hearings and pleadings, and making Girards's law firm resources available. Girards consistently conducted himself and communicated with Klein in a manner that reflected that, as he testified, this is what he agreed to as "local counsel, nothing more." Dkt. No. 159 at 112. He explained

at trial that he came away from his conversation with Klein that was the basis for the verbal agreement with the understanding that "I was not going to have to take the time to educate her on Texas procedure or Texas law or do the research that would be necessary to educate her on that," which "was important to me, because I just didn't have the time and candidly the willingness to do that type of work for local counsel." *Id.* at 17.

The evidence also makes clear, through what Klein said and did, that Klein Frank understood the agreement to require Girards to do more than that as local counsel for their client. The Court finds that Klein Frank's understanding of what was expected of Plaintiffs was, as Klein testified at trial, that Girards would perform work on the case, be committed to the work of the case, do the work the case required, and do it well. This work included attending and setting hearings, making sure the pleadings were appropriate Texas pleadings and drafting appropriate Texas pleadings, checking Klein Frank's work, and providing Klein Frank with backup.

Accordingly, there was – contrary to Plaintiffs' position – no enforceable contract to pay 15 percent of the attorneys' fees in exchange for serving as local counsel as Girards understood that role, and the verbal fee-sharing agreement did not, in fact, contains all essential terms and is therefore not an enforceable contract on which Plaintiffs can recover on a breach of contract claim. Further, to the extent that the request was not superseded by Plaintiffs' pleading breach of contract after the settlement of the *Dawson* case, for the same reasons, Plaintiffs are not entitled to a

declaration that they are entitled to 15 percent of the attorneys' fees recovered in the *Dawson* litigation under their verbal fee-sharing agreement with Klein Frank.

Based on these findings and conclusions, the Court therefore need not separately determine whether there was a co-counsel agreement between Klein Frank and Girards individually because no party suggests that any such contract, if it existed, provided more or less than the verbal fee-sharing agreement between Klein Frank and the Girards Firm or would be subject to any different analysis as to its enforceability or, as discussed below, termination or breach. *See* Dkt. No. 153. Further, the Court need not resolve whether the 15 percent of the fees that Plaintiffs seek is unconscionable and unreasonable under the circumstances. *See id.* at 4, 6, 7.

## II.   Defendant's Termination Of Plaintiffs Was For Cause.

Even if there was an enforceable fee-sharing agreement between Plaintiffs and Klein Frank, Defendant asserts that Girards's disclosure of confidential information was a breach of his duty to Dawson and sufficient to terminate for cause. Defendant contends that it established at trial through credible testimony, including competent expert testimony, that there were ample and sufficient grounds to terminate Plaintiffs as local counsel and the fee-sharing agreement based on Girards's breach of the co-counsel arrangement and breach of duty to Dawson.

"It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline*, 134 S.W.3d at 196. And a party in

breach cannot recover damages for a subsequent breach of the agreement by the other party. *See Info. Commc'n Corp. v. Unisys Corp.*, 181 F.3d 629, 632-33 (5th Cir. 1999).

On September 7, 2011, Girards talked to Sam Saatchi at the Melrose Hotel bar in Dallas about the *Dawson* case. According to Girards's testimony at trial, Girards told Saatchi that he was "working on this case" in which "[t]his guy got scalded in Baghdad working for Fluor," and Saatchi "had this idea that he could help get the case settled, which sounded ridiculous, except that I knew he had a lot of influence in that region." Dkt. No. 159 at 96. Girards testified that Saatchi was from Istanbul, Turkey and that "his godfather is some high-level Saudi Prince or something, and he was doing a lot of projects that require a lot of resources and a lot of power to do." *Id.* Girards testified that Saatchi asked him how much the case is worth or how much do you want, that Girards told Saatchi that Girards thought that the case is worth $10 million, and that Saatchi said he could get the case settled for $10 million. *Id.* at 183. Girards later called Klein and reported this conversation to her.

Girards testified that "[t]here was no disclosure of confidential information" and " nothing I said that was confidential" and that how much the case should settle for "was my thinking" and "my mental impression, my assessment of the value of the case." *Id.* at 184. Girards testified that he "didn't say $10 million would settle the case" but rather that "[t]hat's what I want," that "[t]hats' my value," and that he "had no idea what [his client] Dawson thought or Klein thought." *Id.* at 185; *see also id.* at 186 ("I told [Saatchi] I wanted $10 million for the case."). According to Girards, "[t]his was a conversation I would have had with anybody"; "[e]verything I said was a matter of

public record"; "[t]he fact that the lawsuit was on file was public record"; and Saatchi "was not connected with Fluor. He had no connection with Fluor." *Id.* at 185, 189.

The Court finds that Girards admitted at trial that, without authorization from Klein Frank or his client, he disclosed information regarding his opinion – as counsel to Dawson with, among others, duties of care and loyalty to his client – of the settlement value of the *Dawson* lawsuit to a stranger to the lawsuit who suggested that he may be able to exercise influence over Fluor outside the litigation. Jim Flegle testified at trial that, in his expert opinion, if Girards violated his client's confidentiality and expressed to a stranger at a bar what the settlement goals or valuation of the case was, outside the context of the lawsuit in a social setting, that would have been grounds for termination for cause.

The Court agrees. As one court has observed, "[i]t is difficult to imagine any more closely held secret or confidential communication between an attorney and his client than the attorney's opinion of [] 'the settlement value' of a particular case." *Great American E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*, 100 So. 3d 453, 461 n.8 (Miss. Ct. App. 2012), *aff'd in part & rev'd in part*, 100 So.3d 420 (Miss. 2012).

Girards's agreeing to serve as local counsel for Dawson carried with it Girards's undertaking fiduciary duties to Dawson as his client, including duties of care, candor, and loyalty. Girards's unauthorized disclosure of confidential information was a violation of Texas Disciplinary Rule of Professional Conduct 1.05(b)(1) and Girards's fiduciary duties to his client. *See generally Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App. – Houston [14th Dist.] 2001, pet. denied). This provided sufficient grounds for

Klein Frank's terminating the verbal fee-sharing agreement and terminating Plaintiffs – regardless of the fact that the termination was effected some weeks after the incident – and precludes Plaintiffs' recovery on a claim of breach of contract as to the verbal fee-sharing agreement and on a request for a declaratory judgment that Plaintiffs are entitled to 15 percent of the attorneys' fees recovered in the *Dawson* lawsuit under the fee-sharing agreement.

The Texas Supreme Court's "good cause" standard for termination articulated in *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex. 1969), relates to an attorney-client contract, and its holding is not specifically applicable to a fee-sharing agreement between lawyers, as here. But, even if that standard did apply in the present circumstances, Girards's unauthorized disclosure of confidential information would satisfy the requirement of good cause for termination or discharge of Plaintiffs as counsel for Dawson in the *Dawson* case. *See Mandell*, 441 S.W.2d at 847; *Whiteside v. Hartung*, No. 14-97-00111-CV, 1999 WL 548211, at *6 (Tex. App. – Houston [14th Dist.] July 29, 1999, pet. denied); *Rocha v. Ahmad*, 676 S.W.2d 149, 153 (Tex. App. – San Antonio 1984, writ dism'd).

Further, based on the Court's findings and conclusions above, the Court need not resolve whether any acts or omissions alleged by Defendant to have taken place or been discovered after September 29, 2011 can be taken into consideration when determining whether "good cause" to terminate the local counsel agreement existed on September 29, 2011 or whether the Court should consider any alleged actions by Plaintiffs after

September 29, 2011 in determining whether Klein Frank was justified in terminating Plaintiffs. *See* Dkt. No. 153 at 6.

III.  <u>Plaintiffs Are Entitled To Recover Under Quantum Meruit.</u>

Plaintiffs allege that, even if there is no enforceable verbal fee-sharing agreement or even if Klein Frank terminated Plaintiffs for cause, Plaintiffs should still, alternatively, recover in quantum meruit.

Where there is no valid, enforceable contract covering the services furnished, a party may still recover under quantum meruit. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005); *see also Truly v. Austin*, 744 S.W.2d 934, 936-37 (Tex. 1988) (recovery in quantum meruit may be permitted despite the existence of an express contract that covers the subject matter of the claim where a breaching plaintiff is "allowed to recover the reasonable value of services less any damages suffered by the defendant"). The Texas Supreme Court has defined quantum meruit as "an equitable remedy that is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg,* 166 S.W.3d at 740 (internal quotation marks omitted); *see also Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (quantum meruit provides an equitable remedy that does not arise out of or depend on an enforceable express contract). Founded on unjust enrichment, "[r]ecovery in quantum meruit will be had when non-payment for the services rendered would result in an unjust enrichment to the party benefitted by the work." *Vortt*, 787 S.W.2d at 944 (internal quotation marks omitted).

In Texas, "[t]o recover under the doctrine of quantum meruit, a plaintiff must establish that: 1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Heldenfels Bros.*, 832 S.W.2d at 41; *see also Metroplexcore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 975 (5th Cir. 2014). "The measure of damages in quantum meruit is the 'reasonable value of the work performed.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010) (footnote omitted). "Damages must be proven to a reasonable certainty, but mathematical precision is not required." *United States ex rel. Wallace v. Flintco Inc.*, 143 F.3d 955, 965 (5th Cir. 1998).

As an initial matter, Defendant asserts an unclean-hands defense to recovery in quantum meruit. A party seeking recovery in quantum meruit must come to the court with "clean hands." *In re Gamble*, 71 S.W.3d 313, 325 (Tex. 2002) (Baker, J., concurring). The doctrine presumes that only the equitable can seek equity: "equitable relief is not warranted when the plaintiff has engaged in unlawful or inequitable conduct with regard to the issue in dispute." *In re Francis*, 186 S.W.3d 534, 551 (Tex. 2006). But Texas law requires the party asserting an unclean-hands defense to show that it suffered a "serious harm" as a result of the inequitable conduct. The party asserting the defense must show that "he himself has been injured by such conduct." *Omohundro v. Matthews*, 341 S.W.2d 401, 410 (Tex. 1960); *Afri-Carib Enters., Inc. v. Mabon Ltd.*, 287 S.W.3d 217, 223 (Tex. App. – Houston [14th Dist.] 2009) (the

clean-hands doctrine does not apply unless "the misconduct at issue is connected to the subject of the litigation and the party asserting the defense has been seriously harmed by the misconduct."), *rev'd on other grounds*, 369 S.W.3d 809 (Tex. 2012).

Defendant points to Girards's declining to provide any quantum meruit information in written discovery and in his deposition and, among other things, Girards's failing to appear for certain proceedings in this case. The Court does not find that these facts, whatever else may be said about them, amount to inequitable conduct that seriously harmed Klein Frank and preclude Plaintiffs pursuing their alternative request for a quantum meruit recovery. *See Transamerica Inv. Group, Inc. v. Hamilton*, Civ. A. No. H-12-1102, 2013 WL 4538903, at *9 (S.D. Tex. Aug. 27, 2013).

Defendant further asserts that Girards offered no evidence to carry Plaintiffs' burden of proof on quantum meruit and, rather, abandoned this claim at trial. Defendant notes that Plaintiffs declined in discovery and at trial to present any information in support of their alternative request for a quantum meruit recovery. Defendant argues that, while it does not dispute that Plaintiffs performed some work as Dawson's counsel, to prevail on quantum meruit, Girards must prove not only that he provided legal services to Klein Frank and Dawson but also that those services were valuable and that they benefitted Klein Frank and Dawson. Defendant asserts that Girards presented no real evidence that his alleged services were valuable or that they benefitted Klein Frank and Dawson and that Girards failed to identify any quantifiable or tangible benefit from his professional services. Defendant contends that Girards offered no evidence of any value of his services to Klein Frank or Dawson and that

Girards's failure to quantify the value of any legal services provided to Dawson beyond a bare reliance on a claimed contingent-fee percentage precludes an award of attorneys' fees under quantum meruit.

Plaintiffs did not present any evidence of a specific value of the work performed. Plaintiffs appear to have made the strategic choice to concentrate on convincing the Court to agree that they are entitled to 15 percent of the fee under the verbal fee-sharing agreement. Indeed, at trial, when Girards was asked if he said – in connection with his primary claims for declaratory judgment and breach of contract – "that there should be no consideration as to whether or not you added any value to the case," Girards testified that he "did, and that's based on the factors of value analysis that would be implicated and actually have been addressed by the 5th Circuit. You can't at the back end force a value analysis because it's too speculative, it's too unwieldy to try to do that." Dkt. No. 159 at 122.

However accurate that may be as to his declaratory judgment request or breach of contract claim, under quantum meruit, the reasonable value of the work performed is precisely what a plaintiff is required to show and what the Court is tasked with determining with reasonable certainty, albeit not with mathematical precision.

"Under Texas law, a party seeking to recover on a claim of quantum meruit must introduce evidence on the correct measure of damages, which is the reasonable value of work performed or materials furnished," where "[a] claim in quantum meruit does not proceed upon the contract for the contract price, but proceeds independently of the contract to recover the reasonable value of the services rendered or materials

furnished." *MMR Int'l Ltd. v. Waller Marine, Inc.*, Civ. A. No. H-11-1188, 2013 WL 6491186, at *9 (S.D. Tex. Dec. 10, 2013). "Recently, Texas courts have clearly required specific evidence independent of the contractual damages to support a showing of reasonable value for a damage claim in quantum meruit." *Id.* at *10.

Here, Plaintiffs have not shown that 15 percent of any gross attorneys' fees recovery is the reasonable value of the work that Plaintiffs performed in the *Dawson* case or that they should be awarded such a recovery in the face of the Court's finding of termination for cause, as discussed above.

Plaintiffs provided the Court with general testimony of performing certain tasks as local counsel, summarized in a demonstrative exhibit (PX35), and with copies of, for example, email communications and pleadings reflecting some of that work. But Plaintiffs provided no billing records or information on what hourly rate might appropriately apply to this work and did not otherwise offer any specific evidence of the quantifiable value of their services to Klein Frank or Dawson. When asked at trial, Girards was unable to estimate the time that it took to perform certain various tasks.

Plaintiffs have not fully sustained their burden of showing the reasonable value of their services provided, and, under some circumstances, this might support an award of zero attorneys' fees. *See MMR*, 2013 WL 6491186, at *10; *Marrocco v. Hill*, No. 14-14-00137-CV, 2015 WL 9311521, at *3-*4 (Tex. App. – Houston [14th Dist.] Dec. 22, 2015, no pet. h.); *Green Garden Packaging, Inc. v. Schoenmann Produce Co., Inc.*, No. 01-09-00924-CV, 2010 WL 4395448, at *7 & n.5 (Tex. App. – Houston [1st Dist.] Nov. 4, 2010, no pet.); *Ray v. T.D.*, No. 03-06-00242-CV, 2008 WL 341490, at *8 (Tex.

App. – Austin, Feb. 7, 2008, no pet.); *see also McMillan v. State Farm Lloyds*, 180 S.W.3d 183, 209-10 (Tex. App. – Austin 2005, pet. denied). But case law also suggests that an award of no or zero attorneys' fees, including under quantum meruit, is only appropriate where the trier of fact finds, on an affirmative showing, that no attorney's services were needed or that the services provided were of no value. *See, e.g., French v. Law Offices of Windle Turley, P.C.*, No. 2-08-273-CV, 2010 WL 744794, at *6-*7 (Tex. App. – Fort Worth Mar. 4, 2010, no pet.) (citing cases); *see also Port Elevator Brownsville, L.C. v. Vega*, 358 F. App'x 558, 560-61 (5th Cir. 2009); *Midland W. Bldg., L.L.C. v. First Serv. Air Conditioning Contractors, Inc.*, 300 S.W.3d 738, 739 (Tex. 2009) (per curiam).

No party contends that Dawson and Klein Frank did not need a local counsel's services during the time that Girards was retained to represent Dawson – indeed, much of the evidence at trial related to Defendant's complaints about Girards's performance as co-counsel for Dawson and his failure to provide services to the extent that Defendant expected.

And the Court does not find, on the evidence in the record, that Plaintiffs' services provided to Dawson and Klein Frank on the *Dawson* case were of no value or provided no benefit to them whatsoever. At trial, Ms. Klein herself testified that it is not her "position here today before the Court that Mr. Girards is not entitled to anything for what he did in this case, zero" and that her "position is that I would be delighted to pay him for the value of the services that he rendered. I would have – I've invited him to give me the detail for years. And you know, if he feels that he didn't

want to share that information until like last week, that was his – that's him. But you know what? If he wants to be paid for the value of the work that he performed, I have always felt that that would be [] fair." Dkt. No. 159 at 261-62.

The evidence shows that Plaintiffs provided some research, analysis, and advice to Klein Frank, including in several emails, participated in conference calls with Klein, filed several documents with the court, prepared certain pleadings and reviewed others, and set motions for hearing with the court or otherwise assisted Klein Frank in connection with the *Dawson* case.

Plaintiffs also urge that, "[i]n addition to these tangible benefits, Girards provided the intangible benefits of his reputation, credibility, and history with the court and opposing counsel" and that "[t]hese unquantifiable benefits unquestionably added value to the *Dawson* litigation." Dkt. No. 164 at 23. Plaintiffs further assert that serving as local counsel is a unique role with a unique value; that "[t]hat value includes the tangible benefits that can be quantified and reduced to a number and a fee" but "also includes intangible benefits that are not subject to quantification or specific, strict numerical value"; that those intangibles "include things like the local counsel's cache with the court, the local counsel's cache with the opposing counsel, and local counsel's intimate knowledge of the community, its rules and its customs"; and that Defendant "received these intangible benefits." *Id.* at 24.

Yet, as discussed above, Plaintiffs made no effort to try to quantify those alleged intangible benefits other than to insist on the allegedly contracted-for 15 percent of the gross attorneys' fees recovered in the case. *See id.* at 23-24. And the evidence does not

-24-

support a finding that, during the roughly one-year period in which Girards served as local counsel in the case, Dawson or Klein Frank enjoyed any benefit from Girards's cache or relationship with the presiding judge. As Defendant points out, there were no settlement offers extended by Fluor while Girards was affiliated with the case in any respect; there was only one court hearing, for which Girards missed the preparation session; the court never called on Girards for his opinion or to vouch for anyone or anything; Plaintiffs never acted as a resource for the judge in the *Dawson* suit; and there were no emergencies in the *Dawson* suit during Girards's tenure as local counsel that required the judge's attention. Under a quantum meruit analysis, Plaintiffs have failed to establish that they provided valuable, intangible services for Dawson's or Klein Frank's benefit as local counsel.

But, because the Court finds, based on all the circumstances and evidence, that Plaintiffs' work had value – even though there is no conclusive evidence of a specific value of the work – the Court finds that Plaintiffs are entitled to an award of $5,000.00 as the reasonable value of the work performed by Plaintiffs for the benefit of David Dawson and Klein Frank in connection with the *Dawson* lawsuit. The Court arrives at this amount as its best approximation of the reasonable value of the services provided, taking into account the testimony and documentary evidence related to or reflecting the amount of time and effort that apparently went into the tasks outlined above, the factors set out in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), and the Court's own expertise on the reasonableness of attorneys' fees. *See, e.g.*, *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir.

2004) (noting that "trial courts are considered experts as to the reasonableness of attorney's fees"); *cf. Corey v. Brocato*, ___ F. App'x ___, No. 15-30249, 2015 WL 5603276 (5th Cir. Sept. 24, 2015) (applying Louisiana law on quantum meruit award set by court); *Fawer v. Evans*, 69 F.3d 536 (table), No. 94-60860, 1995 WL 625454, at *2 (5th Cir. Oct. 11, 1995) ("That there is difficulty in allocating legal fees among multiple clients ought not bar an attorney from receiving the reasonable value of services rendered to a nonpaying client who benefitted from the attorney's efforts. Ultimately, the district court must make a judgment call in calculating a quantum meruit award in the face of such uncertainty....").

IV.    Plaintiffs Are Not Entitled To Prejudgment Interest.

Under some circumstances, a party who recovers in quantum meruit may be awarded prejudgment interest commencing from the date of loss. *See United States v. Con-Real Support Grp., Inc.*, 950 F.2d 284, 289 (5th Cir. 1992). But Plaintiffs – who have only pleaded an entitlement to postjudgment interest – are not entitled to recover prejudgment interest on the quantum meruit sum here, where the Court "had to decide what quantum of damages to award, without the guidance of a 'definitely determinable' formula." *Ensley v. Cody Res., Inc.*, 171 F.3d 315, 321-22 (5th Cir. 1999).

V.    There Is No Basis To Award Any Attorneys' Fees Incurred In This Case.

"Since this is a diversity case, Texas law governs the award of attorneys' fees" incurred in this action to any prevailing party. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1487 (5th Cir. 1990).

Plaintiffs are not entitled to recover any attorneys' fees and expenses incurred in the course of this action where they have not prevailed on their claims for breach of contract or (assuming fees were otherwise authorized by law) for declaratory judgment for which they pleaded a right to recover their attorneys' fees. *See* Dkt. No. 121 at 3-4; *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603, 614 (5th Cir. 2000).

Texas law does authorize the recovery of reasonable attorneys' fees from an individual or corporation on a successful quantum meruit claim. *See, e.g.*, *Weitzul Const., Inc. v. Outdoor Environs*, 849 S.W.2d 359, 366 (Tex. App. – Dallas 1993, writ denied) (citing TEX. CIV. PRAC. & REM. CODE §§ 38.001(1), (2), (3)); *see also Campbell, Athey & Zukowski v. Thomasson*, 863 F.2d 398, 400-01 (5th Cir. 1989). But Plaintiffs never pleaded a request for recovery of their attorneys' fees in connection with their quantum meruit claim and did not include their request for recovery of attorneys' fees incurred in this action in the Final Pretrial Order at all. *See* Dkt. Nos. 1-3, 82, 121, 138, 148, & 153. A request "not even implicitly included in the pretrial order is barred unless the order is subsequently amended to prevent manifest injustice." *Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 343 (5th Cir. 1988) (footnote and internal quotation marks omitted). To include a request for fees on quantum meruit now, however, would amount to the Court "itself introduc[ing it] in drafting its opinion months after the trial." *Id.* at 342. Accordingly, where they neither sought such fees in any pleading nor included it in the pretrial order entered pursuant to Federal Rule of Civil Procedure 16(e), Plaintiffs have waived any entitlement to recovery of their attorneys' fees

incurred in this case in connection with their quantum meruit claim. *See Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir. 1998).

Defendant is likewise not entitled to recover its attorneys' fees and expenses incurred in this action because the Texas Declaratory Judgment Act, Texas Civil Practice and Remedies Code § 37.009, does not apply as substantive state law to authorize a recovery of attorneys' fees in a case in this Court arising under diversity jurisdiction. *See Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409-10 (5th Cir. 2006); *Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). And the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, which does apply to this action in this Court, "does not by itself provide statutory authority to award attorney's fees that would not otherwise be available under [substantive] state law in a diversity action." *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988).

## Conclusion

For the reasons and to the extent explained above, the Court finds for Defendant Klein Frank, P.C. on the claims of Plaintiffs James E. Girards and James E. Girards, P.C. d/b/a The Girards Law Firm for declaratory judgment and breach of contract and finds for Defendant Klein Frank, P.C., in part, on Klein Frank, P.C.'s counterclaim against James E. Girards and James E. Girards, P.C. d/b/a The Girards Law Firm.

Specifically, as explained above, the Court finds that Klein Frank, P.C. had the right to terminate James E. Girards and James E. Girards, P.C. d/b/a The Girards Law Firm, was justified in terminating James E. Girards and James E. Girards, P.C. d/b/a The Girards Law Firm, and terminated James E. Girards and James E. Girards, P.C.

d/b/a The Girards Law Firm for cause based on Girards's unauthorized disclosure of confidential information.

The Court otherwise finds against Defendant Klein Frank, P.C. on its requests for declaratory judgment for the reasons explained above.

The Court finds in favor of Plaintiffs James E. Girards and James E. Girards, P.C. d/b/a The Girards Law Firm on their alternative request for a recovery under quantum meruit and awards $5,000.00 as the reasonable value of the work performed by James E. Girards and James E. Girards, P.C. d/b/a The Girards Law Firm for the benefit of David Dawson and Klein Frank, P.C. in connection with the *Dawson v. Fluor* lawsuit, to be paid by Klein Frank, P.C. to James E. Girards, P.C. d/b/a The Girards Law Firm, plus postjudgment interest.

A separate judgment will be entered.

SO ORDERED.

DATED: February 5, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE